IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
v                               )        CR. NO. 2:09cr135-WKW
                                )              (WO)
RUBIN NARD MACK                 )


## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  Introduction

The defendant, Rubin Nard Mack ("Mack"), was charged on July 29, 2009, with one count of the unlawful transport of firearms, in violation of 18 U.S.C. § 922(g)(1).  On August 26, 2009, Mack filed a motion to suppress, in which he asserts that the officers did not have probable cause to stop his vehicle, that he was illegally detained, and that the officers did not have probable cause to search his car, requiring the fruits of the search, including two guns, be suppressed.  The court held an evidentiary hearing on the motion on November 17, 2009. Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

### II.  Facts

On May 27, 2009, a narcotics agent informed Officers Frank L. McDonald and Todd A. Brooks that he had received a tip of possible narcotics activity involving a beige Mercury Grand Marquis and that the car would be traveling along Broadway Road in Montgomery, Alabama.  At some point between three and four o'clock that afternoon while patrolling the area near or around Lower Wetumpka Road and Broadway Road, the officers observed a

beige Grand Marquis swerving from one side to the other side of Broadway Road.[1]  Officer McDonald activated his black Ford Suburban's lights and siren.  Upon stopping the vehicle, Officer McDonald notified SWAT members in the area that he had initiated a stop and requested a canine search of the car.  Officer McDonald then got out of his law enforcement vehicle, approached the car, and asked Mack for his driver license, proof of insurance, and proof of registration.  Mack indicated that he did not have the requested documentation in his possession.  Meanwhile, Officer Brooks approached the passenger's side of the vehicle and asked the passenger his name.  The officers returned to their patrol vehicle, contacted a cadet at headquarters, and requested that a search for outstanding arrest warrants be conducted on Mack and the passenger.

Approximately five minutes later, Officer Nicole Cooper, a canine handler and investigator, and her certified drug dog "Beggeous" arrived on the scene.  Officers McDonald and Brooks asked Mack and the passenger to get out of the car and they did so.  Officer McDonald and Mack stood alongside the patrol vehicle, and Officer Brooks and the passenger stood near the car.  During this time, the officers continued to wait for a cadet or a dispatcher to contact them concerning the results of a warrant search.

One or two minutes later, Officer Cooper and Beggeous ran around the car and conducted an open-air sniff of the vehicle.[2]  During that time, Officer Harris Crosthwait arrived on the scene. After the dog alerted to the odor of narcotics on both the driver and

---

[1] Officer McDonald testified that the car traveled from the left lane over to the right lane twice.  He stated that the vehicle did not travel to the shoulder of the road at any time.

[2] The open-air sniff lasted approximately 30 seconds.

passenger side of the car, Officers Cooper and Crosthwait conducted a search of the vehicle's interior.  At some point, the officers were  informed that there were no outstanding warrants for Mack's or the passenger's arrest.

When Officer Crosthwait lifted the car's hood, he found two firearms stored along the firewall near the window shield on the driver's side of the vehicle.  Upon learning of the results of the search of the car, Officer McDonald asked Mack whether he had a license to carry the pistols and Mack said, "No."  Officer McDonald then placed Mack under arrest for possession of a weapon without a license.

### III.  Discussion

Mack contends that the stop and subsequent search of the car was unreasonable in violation of his constitutional rights.  Specifically, Mack contends that the officers' initial stop of the car was merely a pretext for a search of the car.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).  A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).  In this case, the undisputed evidence indicates that Mack's vehicle swerved from the right side to the left side of the road.  Alabama law requires vehicles to stay in a single lane of traffic.  *See* ALA. CODE 1975 § 32-5A-88(1).  The court concludes that a reasonable officer

in Officer McDonald's position could have stopped the defendant's vehicle for improper lane usage and, therefore, the stop was constitutionally permissible. This court therefore concludes that, to the extent Mack challenges the stop of the vehicle, the motion to suppress should be denied.

The defense asserts that the officers, without articulable suspicion of wrongdoing, extended the detention beyond that necessary to handle the violation. A traffic stop must be of limited duration and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." *Id.* However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir.1991). A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). However, a law enforcement officer is "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir.1999). In addition, the stop "may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense." *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir.2003).

"[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. . . . " *Illinois v. Wardlow*, 528 U.S. 119 (2000). "When making a determination of reasonable suspicion, [the court] must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Perkins*, 348 F.3d at 970 (internal quotation omitted).

The court concludes that the officers had developed reasonable suspicion for continuing the stop. Those reasons include that, earlier in the day, a narcotics agent told Officers McDonald and Brooks to be on the lookout for a beige Mercury Grand Marquis which was involved in drug activity in the same area where the car fitting that description with Mack as the driver was found and that Mack was unable to produce a driver license, proof of insurance, or proof of registration at the time he was stopped. These indicators fully establish the necessary articulable and reasonable suspicion necessary to support the officers' continued detention of Mack and the vehicle. In addition, the officers were justified in continuing the stop during the time they were waiting on an answer from the dispatcher concerning whether there were any outstanding warrants for Mack's arrest. *See Simmons*, *supra*.

The defense argues that the canine, Beggeous, was insufficiently reliable to establish probable cause for the officers to search the car. Specifically, Mack asserts that the narcotics dog was not well-trained, that Beggeous' alerts were frequently inaccurate, and that there is no credible evidence indicating that Beggeous' passive behavior of sitting is an accurate

"alert" to narcotics.  Mack maintains that the officers did not have probable cause to search

the car because records indicate that Beggeous was incorrect 31% of the time.[3]  In *Illinois*

*v. Caballes*, the Court upheld the search of a car based on a dog-sniff detection of narcotics,

543 U.S. 405, 410 (2005), even though evidence indicated that the Illinois drug dogs return

---

[3] The defense's characterization of Beggeous' written work log is as follows:

> 22.  The written log shows use of Beggeous on twenty-four different occasions, following completion of the dog's training in October of 2008. Ten of these events occurred before May 27, 2009.  The dog was used on fourteen events after May 27, 2009.  However, on at least six of those occasions, Cpl. Cooper made no remark in the log regarding Beggeous' performance.  Thus, the dog's actions may only be determined on nineteen occasions.

> 23.  The dog had six false positive alerts out of the known nineteen drug sniffs, including the alert allegedly made in this case on May 27, 2009.

> 24.  Although Cpl. Cooper testified that Beggeous is a "passive" indicator, her written remarks in the dog's log contradict that assertion.  One 4-10-09, Cpl. Cooper wrote "Beggeous indicated on outside. . . .  Scratched a bit." On 8-7-09, Cpl. Cooper wrote Beggeous indicated instantly. . . he began to bite at vent."

(Doc. No. 29, pp. 5-6.) (Footnotes omitted.)  The defense also noted:

> . . . One of the correct positive alerts was characterized as "weak."  On 8-28-09, Cpl. Cooper wrote "Beggeous did not indicate until presented several times.  Beggeous played with paper bags as he was searching.  His indication was week. [*sic*]."

(Doc. No. 29, pp. 6, n. 12.)

Although there is no evidence indicating that Beggeous' "weak" alert to narcotics was incorrect, the defense did not include this positive alert in its calculations.  There is no evidence indicating that Beggeous' alert on August 28, 2009, was a false positive alert.  Thus, the defense's proposition that Beggeous was incorrect 31% of the time is not convincing.

Furthermore, absent a valid statistical analysis of the frequency of false positives when no drugs are found, an assertion of mere error is insufficient to show that a narcotics dog is so unreliable that his alerts are insufficient to establish probable cause.  The mere fact that no obvious drugs were found on six occasions does not necessarily mean that there were not traces of drugs present in a sufficient amount to cause Beggeous to alert to their presence.

false positives any where from 12.5% to 60% of the time, *id.* at 412 (Souter, J., dissenting). Furthermore, during the suppression hearing, Officer Cooper, a certified handler, testified that Beggeous received two months of training and is a certified narcotics canine.  Thus, Officer Cooper's testimony to the dog's considerable training and prior certification is sufficient to establish Beggeous' reliability.  *See United States v. Torres-Ramos*, 536 F.3d 542, 554 (6ᵗʰ Cir. 2008).  Although the defense elicited testimony indicating that on a few occasions Beggeous' alert to drugs did not result in the discovery of narcotics, "'a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and certified.'" *United States v. Boxley*, 373 F.3d 759, 761 (6ᵗʰ Cir. 2004) (quoting *United States v. Diaz*, 25 F.3d 392 (6ᵗʰ Cir. 1994).  While Officer Cooper admitted that Beggeous occasionally alerted when no narcotics were present, there is insufficient evidence to suggest that Beggeous was so unreliable that a reasonable officer in Officer Crosthwaite's position would have developed less than probable cause to search the vehicle.

The evidence shows and the court finds that, while the officers were waiting for a reply from the dispatcher concerning any outstanding warrants, the certified drug dog arrived and alerted to the odor of drugs on the vehicle.  When Beggeous alerted to the odor of narcotics on the passenger and driver side of the vehicle, the officers had sufficient probable cause to search the car for the presence of drugs.  *See Caballes*, *supra*.  This court therefore concludes that the defendant's motion to suppress the guns is due to be denied.[4]

---

[4] In his initial motion to suppress, Mack challenged the voluntariness of any statements made by him as the result of an illegal arrest and detention.  There is no evidence indicating that Mack made any involuntary statements.  Moreover, in his supplemental memorandum, Mack concedes that, other than asking (continued...)

## IV.  Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **December 16, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of December, 2009.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[4](...continued)
whether he had a license to carry a gun, none of the officers questioned or heard him make any statements. (Doc. No. 29, p. 5, n. 5.)