IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CASE NO. 2:09-CR-135-WKW [WO] |
| ) | |
| RUBIN NARD MACK ) | |
| ) | |

**ORDER**

Defendant Rubin Nard Mack ("Mr. Mack") is charged in a one-count indictment with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. # 1.) Mr. Mack filed a motion to suppress the firearms, arguing that they were the fruits of an unconstitutional stop, detainment, and search of his vehicle. (Doc. # 12.) On December 3, 2009, the Magistrate Judge filed a Report and Recommendation ("the Recommendation"), recommending the denial of Mr. Mack's motion to suppress. (Doc. # 31.) Mr. Mack filed Objections to the Recommendation (Def.'s Br. (Doc. # 39)), and the Government responded (Resp. (Doc. # 52)). Pursuant to 28 U.S.C. § 636(b)(1), the court conducts a *de novo* review of the portions of the Recommendation to which the objections were made. For the following reasons, Mr. Mack's objections are due to be overruled and his motion to suppress is due to be denied.

I.   *The Initial Stop*

Mr. Mack first objects to the portion of the Recommendation finding that the stop of his vehicle was constitutional. Specifically, Mr. Mack contends that the officers did not have probable cause to stop the vehicle because (1) they relied solely on an anonymous,

generalized tip, and (2) their contradictory statements undermine their credibility as to the true basis for the stop.

Because an automobile stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). An automobile stop is reasonable so long as law enforcement authorities "have probable cause to believe that a traffic violation has occurred," *id.*, or have a "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). In this case, Corporal Frank McDonald ("Corporal McDonald") and Sergeant Todd A. Brooks ("Sergeant Brooks") testified that they saw Mr. Mack's vehicle swerving from side to side, in violation of Alabama Code § 32-5A-88(1) (requiring vehicles to stay in a single lane of traffic). Thus, regardless of whether the tip about the vehicle was anonymous or general in nature, the officers had probable cause to stop the vehicle.

Mr. Mack further contends that the testimony regarding the "swerving" should be disregarded because the officers' contradictory statements during the suppression hearing undermine their credibility and "at least some of the officers candidly acknowledged that they were looking for a car before they ever observed the [defendant's vehicle]." (Def.'s Br. 1-2.) As to the credibility of the officers, both Corporal McDonald and Seargent Brooks testified during the suppression hearing that they had observed Mr. Mack's vehicle swerving from one side of the road to the other. (Hr'g Tr. 5, 85 (Doc. # 57).) Mr. Mack does not point to any

portion of the transcript where they "contradicted" each other in this regard. Mr. Mack's second contention – that the officers lacked probable cause because they intended to stop the vehicle before they even witnessed any traffic violation – is similarly unpersuasive. The Supreme Court has held that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. Thus, so long as the officers had probable cause to believe that a traffic violation had occurred, their subjective intentions are irrelevant for purposes of Fourth Amendment analysis.

## II.     *The Detention*

Mr. Mack makes a passing reference to the length of the traffic stop, arguing that the delay was unreasonable and in violation of the Fourth Amendment. (*See* Def.'s Br. 2.) He contends that the "four-hour time period" between the stop and the initial court appearance contradicts the officers' testimony and "supports a finding of unreasonable delay." (Def.'s Br. 2.)

"[A] traffic stop may not last 'any longer than necessary to process the traffic violation *unless there is articulable suspicion of other illegal activity*.'" *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (emphasis added) (quoting *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997)). Thus, the relevant time period is from the time the officers stopped Mr. Mack's vehicle until the time they developed a reasonable articulable suspicion that drugs were in the vehicle, *i.e.*, when the narcotics-detection dog "alerted" to the presence of drugs. Corporal McDonald testified that the investigative stop lasted fifteen to twenty

minutes (Hr'g Tr. 14), and Sergeant Brooks testified that the investigative stop lasted "[a]pproximately ten minutes" (Hr'g Tr. 96). A ten to twenty minute detention, during which the officers awaited the results of a warrant search and the arrival of a narcotics-detection dog, does not constitute "unreasonable delay." *See United States v. Williams*, 238 F. App'x 566, 567-68 (11th Cir. 2007).

III.    *The Search of the Vehicle*

Mr. Mack devotes the majority of his brief to undermining the reliability of narcotics-detection dogs generally and the reliability of the narcotics-detection dog used in this case ("Beggeous") specifically. While practitioners and legal scholars can debate the merits and implications of *Illinois v. Caballes*, 543 U.S. 405 (2005), this court is constrained by the Supreme Court's holding. In *Caballes*, the Court held that a dog sniff does not constitute a search, and that a dog sniff may, if the dog is "sufficiently reliable," provide probable cause to search a vehicle. 543 U.S. at 409-10. Mr. Mack properly asserts that the Government bears the burden of establishing that the warrantless search of his vehicle was lawful, and that to do so, the Government must show that the dog sniff "was sufficiently reliable to establish probable cause to conduct" the search. *Id.* at 409. "Reliability is generally present if the dog is 'well-trained.'" *United States v. Nelson*, 309 F. App'x 373, 375 (11th Cir. 2009) (quoting *Caballes*, 543 U.S. at 409).

The Government contends that any evidence of training is sufficient to meet the reliability requirement. (Resp. Br. 6 ("[T]o prove the reliability of a drug detecting canine,

the government must only show that the dog has been trained in narcotics detection.").) However, neither the Supreme Court nor the Eleventh Circuit has reached such a conclusion. *See Caballes*, 543 U.S. at 409 (stating that "the use of a *well-trained* narcotics-detection dog . . . does not implicate legitimate privacy interests") (emphasis added); *Nelson*, 309 F. App'x at 375 (finding that a statement of a dog's training *in addition to* certification from a training school, subsequent training, records of performance, and the officer's familiarity with the dog's reactions, established the dog's reliability). In stating that "evidence of a dog's training is sufficient" to establish reliability, the Eleventh Circuit did not hold that *any* evidence of training is sufficient. Reliability remains the standard, and *Nelson* simply stands for the proposition that this standard can be met with evidence of a dog's training. The Government's rule, if accepted, would require a simple showing of *some* training. Certainly, a statement that a dog was trained, without more (without, for example, any evidence of who conducted the training, the length of the training, where the training was conducted, when the training was completed, what the training entailed, *etc*.), would not suffice to establish the dog's reliability. For example, if a dog was "trained" in narcotics detection, but incorrectly alerted to the presence of drugs in 90 out of 100 cases, the court would not be constrained to find that particular dog "reliable." Instead, the court must determine whether the evidence presented is sufficient to establish that the dog was sufficiently reliable such that its "alert" could provide probable cause to search the vehicle.

As in *Nelson*, the evidence in this case goes beyond a mere statement that Beggeous was trained. The evidence establishes that Beggeous received certification as a narcotics canine from an Alabama Canine Law Enforcement Officer's Training Center in October 2008. (Hr'g Tr. 62, 66.) The evidence further establishes that Beggeous and his handler, Corporal Nicole Elizabeth Cooper ("Corporal Cooper"), underwent four weeks of training together, which included instruction on indication and searching techniques, and that Corporal Cooper was familiar with Beggeous's reactions. (Hr'g Tr. 67.) Thus, the court finds that the Government has met its burden in establishing that Beggeous "was sufficiently reliable to establish probable cause to conduct" the search. *Caballes*, 543 U.S. at 409.[1]

Mr. Mack further argues that there is insufficient evidence to find that Beggeous "alerted" to the presence of drugs in or on Mr. Mack's vehicle. To the extent Mr. Mack reargues Beggeous's reliability, that argument has been addressed above. Mr. Mack also argues that "a handler can consciously or unconsciously 'cue' the dog as to his or her expectations" (Def.'s Br. 10), but offers no evidence that such "cueing" occurred in this case. What the evidence does show is uncontradicted testimony of Corporal Cooper and Corporal McDonald that Beggeous "alerted" to the presence of drugs. Corporal Cooper's testimony established that Beggeous is a "passive dog" that "generally sits" when alerting to the presence of narcotics. When asked what happened during the sniff of Mr. Mack's vehicle,

---

[1] Even assuming, as Mr. Mack contends, that "Beggeous was unambiguously wrong thirty-one percent of the time" (Def.'s Br. 9), a sixty-nine percent success rate does not undermine Beggeous's reliability in this case. All that probable cause requires is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Corporal Cooper testified that "[d]uring the open air sniff of the vehicle, Beggeous actually alerted to the odor of narcotics on the vehicle." (Hr'g Tr. 57.)  Additionally, when asked how he alerted, Corporal Cooper responded, "He sat."  (Hr'g Tr. 57.)  Corporal McDonald's testimony corroborates Corporal Cooper's testimony.  He states that "[a]s I was sitting there waiting for the warrant check, I did hear [Corporal Cooper] advise that her dog did indicate." (Hr'g Tr. 11.)  Thus, the Magistrate Judge appropriately found that "Beggeous alerted to the odor of narcotics" and that "the officers had sufficient probable cause to search the car for the presence of drugs."

Accordingly, it is ORDERED that Mr. Mack's objections (Doc. # 39) are OVERRULED.  It is further ORDERED that the Recommendation (Doc. # 31) is ADOPTED, and that the motion to suppress (Doc. # 12) is DENIED.

DONE this 11th day of February, 2010.

/s/  W. Keith Watkins
UNITED STATES DISTRICT JUDGE